UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>SILERGY CORPORATION, et al.,<br><br>   Defendants. | Case No. 14-cv-01745-VC<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS, AND DENYING MOTION TO STAY**<br><br>Re: Dkt. No. 117, 120, and 124 |

Breach of Contract

Silergy and Chen's motion to dismiss MPS's breach of contract claim is denied.

The breach of contract claim is based on the "Nondisclosure" provision of a settlement agreement reached by the parties to resolve prior litigation. The nondisclosure provision states as follows: "Dr. Chen represents and warrants not to use or disclose any document that contains MPS confidential information, including all documents that Dr. Chen received or sent while he was employed by MPS." MPS alleges that Chen and Silergy are breaching this nondisclosure provision by "incorporating information obtained from" documents Chen previously stole from MPS "into Silergy's flip chip package products . . . ."

Silergy and Chen respond that there can be no breach of contract as a matter of law because the alleged theft of the documents took place before the parties reached their settlement agreement, and the alleged *use* of the documents also began before the parties reached their settlement agreement. They point to language in the agreement by which MPS releases Chen and Silergy from any claims "relating to actions taken before the Effective Date" of the agreement. And they argue that the continued sale today of any product that stems from use of stolen documents before the date of the settlement is covered by the release. The absolute best that can

be said of this argument is that it raises the possibility that the settlement agreement is ambiguous. The argument perhaps creates some doubt about whether the continued use of previously-stolen documents in connection with the development or sale of flip chip package products could constitute a violation of the agreement not to "use . . . any document that contains MPS confidential information." But "[a] motion to dismiss cannot be granted against a complaint to enforce an ambiguous contract." *Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994) (citing *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)); *see also Lord Abbett Mun. Income Fund, Inc. v. JoAnn Asami*, No. C 12-03694 DMR, 2012 WL 5379591, at *6 (N.D. Cal. Oct 31, 2012); *Hervey v. Mercury Cas. Co.*, 110 Cal. Rptr. 3d 890, 896 (Ct. App. 2010). Therefore, the defendants' motion to dismiss the breach of contract claim is denied.

Willful Infringement

Silergy's motion to dismiss MPS's willful infringement claims is granted. With respect to the '048 patent, MPS has adequately alleged that Silergy had pre-suit knowledge of the patent, but it has not sufficiently alleged that Silergy acted despite an objectively high risk that it was infringing or that Silergy knew of this objectively high risk. With respect to the '758 and '899 patents, MPS has not adequately alleged Silergy's pre-suit knowledge of the patents, nor has it adequately alleged that Silergy acted willfully in the post-suit time period.

*Pre-Suit Knowledge*

Silergy and MPS spend the bulk of their energy disputing whether the second amended complaint adequately alleges that Silergy knew about the patents-in-suit before the original complaint was filed. Construing all allegations in the light most favorable to MPS, the complaint sufficiently alleges that Silergy knew of the '048 patent prior to the lawsuit, but it does not sufficiently allege that Silergy knew or should have known of the '758 or '899 patents.

As to the '048 patent, MPS alleges that Chen knew of its existence because of his role on MPS's Patent Committee, which, according to the complaint, "meant that he was aware of MPS's

2

1   entire patent pipeline due to his job responsibilities." SAC ¶ 21.  More specifically, MPS alleges
2   that "Chen was involved in approval and oversight of MPS's patent application that would lead to"
3   to the '048 patent.  SAC ¶ 22.  While it is true that "knowledge of a patent application does not
4   equal knowledge of issued patents," *Boundaries Solutions Inc. v. CoreLogic, Inc.*, No. 5:14-cv-
5   00761-PSG, 2014 WL 495017, at *4 (N.D. Cal. Sept. 29, 2014), here there is an allegation that
6   Chen was not only aware of the '048 patent application, but also that he was actively following the
7   MPS patent pipeline that existed at the time Chen left MPS.  SAC ¶ 22 ("[O]nly three months
8   before he left MPS to found Silergy, Dr. Chen requested and received from another MPS
9   employee a summary of MPS's product-to-patent correlation information.  This information
10  included [the application] which would lead to the '048 Patent.").  What's more, MPS also alleges
11  that Chen and Silergy knew of the '048 patent through negotiations related to the settlement
12  agreement mentioned above.  According to the complaint, during these settlement negotiations,
13  Silergy and Chen "either evaluated the patent portfolio of MPS, or were willfully blind in not
14  doing so." SAC ¶ 23.  These allegations, taken together, raise a plausible inference that Chen and
15  Silergy had pre-suit knowledge of the '048 patent.

16  However, MPS's allegations are insufficient to suggest that Silergy knew of the '758 and
17  '899 patents prior to the original complaint.  MPS makes the same general allegations that it does
18  with respect to the '048 patent, namely, that Silergy knew of the '758 and '899 patents because of
19  Chen's role on the MPS patent committee and because Chen and Silergy reviewed MPS's patent
20  portfolio during settlement negotiations.  But the timing of these events renders these allegations
21  implausible.  Chen left MPS to form Silergy in February 2008, yet the '758 patent was not issued
22  until October 8, 2012, over four-and-a-half years later.  And the '899 was not issued until January
23  29, 2013, over five years later.  Absent specific allegations about Chen's knowledge of these two
24  patents, the significant time gap between his service on the committee and the date the patents
25  were issued makes it implausible that Chen knew of these patents as a result of his role on the
26  MPS patent committee.   Further, neither of these two patents existed when the parties signed the
27  prior settlement agreement on December 6, 2011, so it seems impossible that Chen and Silergy
28  would have learned of them through reviewing MPS's patent portfolio at the time.

3

1    Finally, MPS argues that Silergy gained knowledge of the '758 and '899 patents through
2    the filing of the original complaint on November 1, 2013 in the Central District of California.[1]
3    Further, because in July 2014 this Court determined that the settlement agreement between the two
4    parties required them to mediate the dispute before allowing one party to sue the other, MPS
5    argues that the current litigation really only began with the filing of the second amended complaint
6    in February 2015, and so the original complaint should essentially be treated as a demand letter
7    that gave the defendants "pre-suit knowledge" of the patents.  This is wrong.  The litigation began
8    when MPS sued the defendants.  The fact that MPS ignored the provision in the settlement
9    agreement which required the parties to mediate, thereby resulting in Silergy's temporary dismissal
10   from the case, does not change the fact that this is the same lawsuit that MPS originally filed in
11   November 2013.
12   In sum, MPS has sufficiently alleged that Silergy had pre-suit knowledge of the '048
13   patent, but it has not raised a plausible inference that Silergy had pre-suit knowledge of the '758 or
14   '899 patents.

*Post-Suit Conduct - '758 and '899 patents*

Silergy argues that if MPS cannot allege that Silergy had pre-suit knowledge of the patents, then, by definition, MPS cannot maintain a willfulness claim based on post-suit conduct because Silergy has not sought a preliminary injunction.  For this proposition Silergy quotes a sentence from *In re Seagate*, 494 F.3d 1360, 1374 (Fed. Cir. 2007), which reads as follows: "A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Id*.  This sentence from *Seagate*, and the discussion surrounding the sentence, is dictum.  *Seagate* involved the extent to which a defendant waives the attorney-client privilege when it relies on advice of counsel as a defense to a claim of willfulness.  *Seagate* did not involve the circumstances in which

---

[1] MPS also alleges that the defendants have pre-suit knowledge by virtue of a letter that MPS sent to the defendants on October 31, 2013. But MPS sued the defendants the next day, so it's hard to imagine how this letter could possibly satisfy the pre-suit knowledge requirement.

4

a plaintiff can or cannot plead a claim for willful infringement in an amended complaint based on post-filing conduct by the defendant.

Nonetheless, some courts seem to have interpreted this sentence as reflecting the adoption by the Federal Circuit of a rule that a plaintiff may not state a claim for willful infringement based on a defendant's post-suit conduct if the plaintiff has not moved for a preliminary injunction to bar the defendant from continuing to infringe. In other words, some courts appear to have interpreted the Federal Circuit's statement in *Seagate* as creating a rule that a plaintiff *waives* the right to pursue a claim for willful infringement based on post-suit conduct if it does not move for a preliminary injunction (at least unless circumstances somehow change later in the litigation that would justify adding a willful infringement claim). *See, e.g.*, *McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1123 (C.D. Cal. 2013) ("*Seagate* makes clear that an allegation of willfulness based on the accused infringer's post-suit knowledge of the patent can only be sustained if the plaintiff seeks a preliminary injunction."). Other courts agree that such a rule exists, but recognize that there are certain exceptions to the rule, such as when it is obvious a plaintiff would be unable to get a preliminary injunction because it could not show irreparable harm. In other words, some courts hold that although a plaintiff generally may not pursue a claim for willful infringement if it does not seek a preliminary injunction, that is not a per se rule. *See, e.g.*, *Zond, Inc. v. SK Hynix Inc.*, 2014 WL 346008, at *6 (D. Mass. Jan. 31, 2014) (holding that patentee could not maintain a willful infringement claim based on post-filing conduct when patentee did not seek preliminary injunction and did not meet one of the exceptions to the preliminary injunction requirement).

But it's not clear why there should be *any* relationship between the decision by a patentee to refrain from seeking a preliminary injunction and the question of whether a defendant is willfully infringing after a lawsuit is filed. In other words, it's not clear why there should be any rule (whether per se or with exceptions) that a plaintiff cannot state a claim for post-filing willfulness without first seeking a preliminary injunction. Whether a defendant is willfully infringing during a lawsuit depends on whether the defendant continues to engage in the accused conduct despite knowing of a high likelihood that it is infringing. The answer to that question

5

could be "yes" even if a plaintiff, for whatever reason, decides not to move for a preliminary injunction. And therefore it seems wrong to say that a plaintiff cannot, at the pleading stage in an amended complaint, "state a claim" for willful infringement during the post-filing period if it has not sought a preliminary injunction.

A better way to think about the issue is this: a plaintiff can state a claim for post-filing willful infringement so long as the plaintiff alleges, in an amended complaint and with sufficient particularity, that there is an objectively high risk the defendant is continuing to infringe and the defendant knows or should know of that objectively high risk. That, after all, is what a plaintiff must prove to prevail on a willful infringement claim. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010). Whether a plaintiff seeks a preliminary injunction has nothing to do with that question, and therefore has nothing to do with whether the plaintiff can state a claim for willfulness. Rather, the failure to seek a preliminary injunction becomes relevant at a later stage, if the plaintiff ultimately *proves* its well-pled allegations of post-filing willful infringement. At that point, the court is called upon to exercise its discretion whether to award damages for the willful infringement found by the jury. 35 U.S.C. § 284. And in exercising its discretion on that issue, a court may well conclude that the patentee "should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct" when the patentee did "not attempt to stop an accused infringer's activities" during the litigation. *Seagate*, 497 F.3d at 1374.

Presumably courts would reach this conclusion with some frequency in cases where only post-filing willfulness has been found and where the plaintiff didn't seek interim relief. But there are plenty of reasons, unrelated to the merits, why a plaintiff might not seek a preliminary injunction, and any inquiry about the propriety of a plaintiff's decision to refrain from seeking interim relief is highly fact-dependent. *See, e.g.*, *HTC Corp. v. Tech Props. Ltd.*, 2013 WL 5225043, at *12 (N.D. Cal. Sept. 17, 2013); *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1015 (S.D. Cal. 2011). And because a plaintiff's decision not to seek interim relief says nothing about the actual willfulness of the defendant, there's no reason to engage in this fact-dependent inquiry on a motion to dismiss an amended complaint. To the contrary, such an inquiry seems to put the cart before the horse, effectively requiring district courts to adjudicate patent

infringement claims prematurely, before discovery has been completed and potentially before the parties have complied with the local patent rules, for the sole purpose of deciding whether a plaintiff should be allowed to pursue a post-filing willfulness claim.

*Adequacy of MPS's Allegations*

With this understanding, the question with respect to the '758 and '899 patents is whether MPS has, in its second amended complaint, alleged with sufficient particularity that Silergy continues to engage in the accused conduct despite knowing of an objectively high likelihood that it is infringing. The question is similar with respect to the '048 patent, because even though MPS has sufficiently alleged that Silergy had pre-suit knowledge of this patent, MPS must still allege that Silergy acted willfully. *See Vasudevan Software, Inc. v. TIBCO Software Inc.*, 2012 WL 1831543, at *4 (N.D. Cal. May 18, 2012) ("In short, while a patentee need only make out the barest factual assertion of knowledge of an issued patent, a bare recitation of the required legal elements for willful infringement is inadequate.").

MPS's allegations do not raise a plausible inference that Silergy acted despite knowing of an objectively high risk that it was infringing. Instead, MPS's allegations are mostly a boilerplate recitation of the legal elements of the claim. SAC ¶¶ 41, 51, and 61. So even though MPS has sufficiently alleged Silergy's pre-suit knowledge of the '048 patent, and even though MPS's failure to seek a preliminary injunction does not prevent it from asserting a post-filing willful infringement claim with respect to the '758 and '899 patents, MPS has not alleged with sufficient particularity that the defendants acted with the requisite state of mind. In other words, MPS has not, in its allegations relating to willful infringement, included any facts that would allow a trier of fact to conclude that the defendants acted with a level of intent that is more culpable than the typical infringer. *See Vasudevan Software* 2012 WL 1831543, at *5 ("Other than the mere suggestion that infringement continues, there are no facts in the FAC . . . that would support a claim of recklessness. To permit [the plaintiff] to proceed in this fashion would invite claims of willfulness in every patent suit, as a matter of course, regardless of the facts.").

Therefore, Silergy's motion to dismiss MPS's willful infringement claim is granted with

7

respect to all three patents-in-suit. Dismissal is with partial leave to amend. With respect to its claim for pre-filing willful infringement of the '758 and '899 patents, dismissal is without leave to amend because it is impossible that MPS could allege, in good faith and at this stage, pre-filing knowledge of those patents (although discovery could give rise to a motion for leave to amend). With respect to its claim for pre-filing willful infringement of the '048 patent, MPS has leave to file an amended complaint within 14 days of the date of this order.

With respect to its claims for post-filing willful infringement of all three patents, MPS also has leave to file an amended complaint. MPS may amend its complaint with respect to post-filing willful infringement within the above-referenced 14-day period, or it may pursue discovery before deciding whether to add more detailed allegations of post-filing willful infringement. If it elects the latter, the Court will grant MPS leave to amend the complaint for this purpose (and the defendants will of course have the opportunity to move to dismiss the claims).

Induced and Contributory Infringement

The defendants' motion to dismiss MPS's induced and contributory infringement claim is denied in part and granted in part. For the '048 patent, it is denied in full. For the '758 and '899 patents, it is granted with respect to the pre-suit time period, because, as discussed above, MPS has not plausibly alleged the defendants' knowledge of these two patents. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011) (plaintiff must show that the defendant had knowledge of the patent's existence and knowledge that the defendant's induced or contributory acts caused infringement). But it is denied with respect to the post-suit period, because MPS has plausibly alleged induced and contributory infringement, and these claims do not require pre-suit knowledge. *See Skyworks Solutions Inc. v. Kinetic Techs. Inc.*, 2014 WL 1339829, at *3 (N.D. Cal. Apr. 2, 2014) ("In the Northern District of California, courts have concluded that for a claim of induced infringement, knowledge of the patent can be established through the filing of the complaint.").

Service of Chen

MPS attempted to serve Chen through Michael Grimm, who represented Chen, in Chen's personal capacity, at the mediation between the parties. It appears Grimm was acting as Chen's agent and could accept service on Chen's behalf. *See Warner Bros. Records. v. Golden W. Music Sales*, 36 Cal. App. 3d 1012, 1018 (1974). But even had no such authority been implied, the Court would allow MPS to effectuate service on Chen through Grimm under Fed. R. Civ. Pro. 4(f)(3). *See, e.g., Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (holding that a plaintiff is not required to attempt service by all feasible alternatives before service under Rule 4(f)(3) is allowed, and that service under Rule 4(f)(3) is left to the discretion of the district court). Therefore, Chen has been served through Michael Grimm.

Motion to Stay

The defendants' motion to stay the litigation is denied without prejudice to refiling that motion if the PTAB decides to institute *inter partes* review.

**IT IS SO ORDERED.**

Dated: June 18, 2015

_____
VINCE CHHABRIA
United States District Judge